**The ALPENA SAVINGS BANK, a Michigan State Savings Bank, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 146–84C.

United States Claims Court.

May 20, 1985.

**250**

Daniel E. Patt, Southfield, Mich., for plaintiff. Patt & Lebow, of counsel.

Kathleen A. Flynn, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard. David M. Cohen, Director, Thomas W. Petersen, Asst. Director, and Ronald F. Gottschalk, Farmers Home Admin., of counsel.

## OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

Plaintiff, Alpena Savings Bank, contends in this suit that the Farmers Home Administration (FmHA) failed to honor its guarantee of plaintiff's loan to Insultherm, Inc. Defendant denies that it made any such guarantee.

Plaintiff's claim arises under FmHA's Business and Industrial Loan Program. The purpose of this program is to "improve, develop, or finance business, industry, and employment and improve the economic climate in rural communities" by "bolstering the existing private credit structures through guarantee of quality loans." 7 C.F.R. § 1980.401(b) (1981). The process of obtaining a note guarantee under the program is commenced by the filing of an application pursuant to 7 C.F.R. § 1980.451(a) (1981) (Form FmHA 449–1, *see* 7 C.F.R. § 1980.495 app. A (1981)). If the application is acceptable to FmHA, a "Lender Certification" (Form FmHA 449–34) and a "Lender's Agreement" (Form FmHA 449–35) are completed by both the lending institution and FmHA. *See* 7 C.F.R. §§ 1980.60, 1980.61, 1980.454, 1980.-461 (1981). Both a completed Form FmHA 449–34 and Form FmHA 449–35 are necessary for a loan to be guaranteed by the government. 7 C.F.R. § 1980.6(a)(7) (1981). The authority to execute forms for lenders' agreements and loan guarantees for FmHA is vested in the State Director of FmHA, or the District Director, State Program Loan Chief or County Supervisor, with ultimate review by the State Director. 7 C.F.R. §§ 1980.61(g), 1980.454, 1980.-461(G)(3) (1981).

Plaintiff does not contend that its loan guarantee was procured through compliance with the regulatory scheme just outlined. Instead, plaintiff relies upon the circumstances which follow:

On or shortly prior to August 1980, Insultherm, Inc., applied directly to the FmHA for a $1,000,000 loan. On August 29, 1980, the State Director responded to Insultherm's application by letter with a copy to Mr. James A. Cameron, president, Alpena Savings Bank, stating that FmHA had completed its review of the information furnished with respect to the loan application and advised that it could not pursue the loan proposal for the following reasons, among others: (1) The business had not generated a profit and FmHA could see limited means of improvement from the use of the loan proceeds; (2) the firm was nearly insolvent; (3) its creditability was not high; (4) its balance sheet indicated $1,000 net worth as compared to $450,000 in debt; and (5) it was too heavily leveraged for further debt consideration.

Shortly thereafter, Insultherm, Inc., applied to Alpena for a FmHA 90 percent guaranteed loan of $750,000, and on September 9, 1980, the bank sent a letter to Mr. James E. Trumbell, Chief, Business and Industry Division, FmHA, in Lansing, Michigan, asking for FmHA's assistance in supporting the loan. After some oral discussion, Alpena's president Cameron wrote to Trumbell:

October 8, 1980

Dear Mr. Trumbell

Based on your phone call of this morning informing us that your agency was sending us today an application for a $750M guaranteed loan to Insultherm, Inc., we

request your approval to make interim advances against the loan pending completion of the application.

Also, per our agreement, the Bank will advance to the principal Mr. Wayne Dubey, $100,000.00 which will be injected into the corporation as permanent capital.

If the foregoing meets with your agency's approval please sign and return the enclosed copy of this letter.

> Sincerely,
> /s/ James A. Cameron
> President

Trumbell then returned to Cameron a copy of such letter with the following endorsement on the bottom:

> The Farmers Home Administration agrees to the foregoing.
> /s/ James E. Trumbell
> Chief, Business & Industry

It was not until 5 months later, on March 17, 1981, that plaintiff submitted a written application to FmHA for a guarantee of the loan to Insultherm. However, before Insultherm could fully comply with certain pre-conditions set by FmHA for approval of the loan, Insultherm defaulted on its loans and violated its loan agreement with the bank, and the bank withdrew the application.

Plaintiff has filed this suit to enforce as a contract the provisions of the October 8, 1980, letter. Plaintiff contends that this letter constitutes a guarantee by the government of its advance to Insultherm in the amount of $100,000, while defendant denies that it made any kind of guarantee. There is also a conflict in the affidavits of the correspondents as to the meaning of the letter and agreement thereto. Mr. Trumbell states that it merely confirmed an oral agreement that if the $750,000 loan guarantee application was ultimately approved, the proceeds could be used to repay the lender's interim advances. Mr. Cameron states that Trumbell agreed that the interim advances were covered by FmHA's guarantee in any event. Mr. Trumbell's version appears the more reasonable one in view of a letter he wrote to Mr. Cameron

on October 9, 1980, stating that before the matter could be pursued a loan application would first have to be filed and further that the guarantee request would have to be reduced below 90 percent. However, in view of the decision herein which follows, this dispute need not be resolved.

■ Plaintiff's position is without merit. Defendant is correct in its assertion that, even if the October 8 letter could be read as plaintiff suggests, Mr. Trumbell lacked the authority to bind the government to guarantee the interim advance given by Alpena to Insultherm. It is well established that the United States is not bound by its agent acting beyond the scope of his authority and contrary to applicable regulations. *Schweiker v. Hanson,* 450 U.S. 785, 788–89, 101 S.Ct. 1468, 1470–71, 67 L.Ed.2d 685 (1981); *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Haight v. United States,* 209 Ct.Cl. 698, 538 F.2d 346, *cert. denied,* 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976); *National Bank of South Carolina v. United States,* 1 Cl.Ct. 33, 37, 553 F.Supp. 1064, 1069 (1982). (1982).

Plaintiff has cited several sections of the regulations to support its contention that Mr. Trumbell had actual authority to bind the government to guarantee its interim advance by signing the October 8 letter; but none of the cited sections support this contention. As already noted, the authority to execute forms for lenders' agreements and loan guarantees for FmHA is vested in the State Director of FmHA, or the District Director, State Program Loan Chief or County Supervisor, with ultimate review by the State Director. 7 C.F.R. §§ 1980.61(g), 1980.454, 1980.461(G)(3) (1981). Moreover, plaintiff has been unable to cite any section of the regulations which provides authority to *any* employee of FmHA to grant loan guarantees, whether final or interim, before an application has been received and reviewed by FmHA. Indeed, Title 7 C.F.R. § 1980.454 (1981) provides that "[t]he State Director or any other FmHA personnel shall not sign any

document other than those specifically provided for in the regulations." Needless to say, the October 8 letter is not a form contained anywhere in these regulations.

Plaintiff's claim that the government guaranteed repayment of plaintiff's interim advances to Insultherm must fail because it cannot be shown that Mr. Trumbell was duly authorized to guarantee any loans, or that Mr. Trumbell or anyone else, for that matter, was authorized to guarantee repayment of interim advances before any loan application was submitted, examined or approved by FmHA. *See Dahl v. United States,* 695 F.2d 1373, 1379 (Fed.Cir.1982); *State of Arizona v. United States,* 216 Ct.Cl. 221, 228, 575 F.2d 855, 859 (1978); *Alabama Rural Fire Insurance v. United States,* 215 Ct.Cl. 442, 458–59, 572 F.2d 727, 736 (1978); *Housing Corp. of America v. United States,* 199 Ct.Cl. 705, 711–12, 468 F.2d 922, 925 (1972); *Hamilton Bank v. United States,* 6 Cl.Ct. 267, 271 (1984).

■ Plaintiff's contention that the advances made to Insultherm should be considered "protective advances" is similarly without merit. Protective advances are defined in the Lender's Agreement (Form FmHA 449–35, Clause XIII), prescribed by the regulations (7 C.F.R. §§ 1980.65 and 1980.83 App. B, par. XIII), as secured advances made by the lender for such things as "advances made for taxes, annual assessments, ground rent, hazard or flood insurance premiums effecting [sic] the collateral, and other expenses necessary to preserve or protect the security." Since they are provided for only in the Lender's Agreement, it is impossible to have a protective advance before such Lender's Agreement is approved. Furthermore, it must be approved by the State Director. 7 C.F.R. § 1980.472 (1981).

■ Finally, plaintiff concedes that its claim of equitable estoppel against the government fails if it is determined that Mr. Trumbell lacked the actual authority to bind the government to insure the interim advances to Insultherm. *See Thanet Corp. v. United States,* 219 Ct.Cl. 75, 85, 591 F.2d

629, 635 (1979); *Jackson v. United States,* 216 Ct.Cl. 25, 41, 573 F.2d 1189, 1197 (1978); *Emeco Industries, Inc. v. United States,* 202 Ct.Cl. 1006, 1015, 485 F.2d 652, 657 (1973).

In any event, on the facts herein there can be no estoppel. One claiming estoppel by acting in reliance on his adversary's conduct, must have been reasonable in such reliance. "If at the time when he acted, such party had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation." *Heckler v. Community Health Services of Crawford,* 467 U.S. 51, ——, 104 S.Ct. 2218, 2223–24, 81 L.Ed.2d 42 (1984). And "those who deal with the government are expected to know the law and may not rely on the conduct of government agents contrary to law." *Id.* 104 S.Ct. at 2226. As a participant in FmHA's Business and Industrial Loan Program, plaintiff had a duty to familiarize itself with its legal requirements for loan guarantees. FmHA's regulations are published in the Code of Federal Regulations, and plaintiff could readily have verified who had authority to issue a guarantee. Had it given the matter a minimum of thought, it would necessarily have concluded that, with all of the detailed prerequisites for a loan guarantee, FmHA would hardly have authorized anyone to guarantee advances even before the borrower submitted any application to the agency containing the information necessary for a reasonable consideration of such a guarantee.

Plaintiff's cross-motion for summary judgment is denied. Defendant's motion for summary judgment is granted, and the clerk is directed to dismiss the complaint with prejudice and assess costs against the plaintiff.