**Stanley LOWENSTEIN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 586–88T.**

United States Court of Federal Claims.

Oct. 30, 1992.

**40**

Herbert L. Zuckerman, Newark, N.J., attorney of record, for plaintiff.

Barbara E. Seaman, David Gustafson, Claims Court Section, Tax Div., Dept. of Justice, Washington, D.C., with whom were Mildred L. Seidman and Asst. Atty. Gen. Shirley D. Peterson, attorneys of record, for defendant.

## OPINION

HORN, Judge.

This case is before the court on the defendant's motion for summary judgment, and the plaintiff's cross-motion for summary judgment. Jurisdiction is uncontested under 28 U.S.C. § 1491 (1982). Plaintiff, Stanley Lowenstein, claims a refund of taxes assessed and collected for the tax year 1980, in the amount of $23,595.00, or such greater amount as may be refundable, together with costs and interest, as provided by law.

After a thorough review of the pleadings filed by the parties and the applicable law,

1. Defendant, in its proposed findings of uncontroverted facts, erroneously cites to "R" & B Management Corp.

2. Plaintiff points out in his cross motion for summary judgment that plaintiff actually had a

the court, hereby, GRANTS defendant's motion for summary judgment and DENIES plaintiff's cross-motion for summary judgment.

## FACTS

The "Bedford Associates Limited Partnership Certificate and Agreement," established a partnership to invest in a federally financed housing project to be constructed and owned by Bedford Towers Apartments, Ltd. (Tower). The agreement was signed on November 5, 1980 by three general partners: John Luciani, Bernard M. Rodin and J & B Management,[1] a New Jersey corporation, and four limited partners: Steven Klein, Mindy Weisser, Terry Leiweke, and Chris Walkotten, and filed in the Bergen County, New Jersey clerk's office on November 10, 1980. The primary purpose of the partnership was stated as:

... to invest, directly or indirectly, as a limited partner and to thereby acquire and own a limited partnership interest in a certain Georgia limited partnership styled Bedford Tower Apts., Ltd. [Tower] ... whose sole business and purpose shall be to acquire, own and hold certain real property located in the City of Atlanta, Fulton County, Georgia, and to build and develop, or cause to be built and developed thereon and to own and operate an apartment project....

On December 1, 1980, a "First Amendment of Limited Partnership Certificate and Agreement Bedford Associates" was executed and notarized by the individual partners. This amendment called for the replacement of the original four limited partners with seventeen new limited partners, including plaintiff. This amendment was filed in the Bergen County clerk's office on December 30, 1980. Under the terms of this amendment, plaintiff acquired a 7.5272 percent interest in Bedford Associates' profits and losses.[2]

7.76% interest in the partnership, as reflected on the Partners Share of Income form (Form K-1), not a 7.5272% interest as reflected on the signature page of the First Amendment to the Bedford Associates' partnership. The difference in the percentages is characterized by plaintiff

Tower timely filed a Form 1065 U.S. Partnership Return of Income for 1980, claiming a loss of $264,654.00. Thereafter, Bedford Associates filed its partnership return, Form 1065, claiming total losses of $375,747.00 for 1980, and on which Bedford Associates allocated all of its 1980 losses (including 97% of the loss of Towers Apartments, Ltd.) to the individual partners in Bedford Associates. These claimed losses were made up as follows:

| | |
|---|---:|
| 97% share of Tower's loss (.97 × 264,654) | $256,714.00 |
| Guarantee Payments | 110,000.00 |
| Legal Fees | 9,000.00 |
| Amortization | 33.00 |
| TOTAL | $375,747.00 |

Plaintiff, Lowenstein, timely filed his 1980 Individual Income Tax Form 1040 and, based on Bedford Associates' claimed losses, reported $29,158.00 as his 7.76 percent share of the 1980 Bedford Associates loss. Plaintiff also reported a tax liability of $57,737.00 on his 1980 Form 1040. Plaintiff included a payment of $2,648.00 with his return in satisfaction of his income tax liability, with the balance of the alleged tax liability made up by tax withholdings.

Tower's 1980 partnership return, which contained the $264,654.00 claimed loss, was audited by the Internal Revenue Service (IRS). The "Examination Changes—Partnerships, Fiduciaries, Small Business Corporations, and Domestic International Sales Corporations," Form 4605–A, completed by the IRS on October 26, 1982, in response to the audit, disallowed all but $69,904.00 of the $264,654.00 deductions originally claimed by Tower. Additionally, by an attached Explanation of Items form (Form 886–A), the IRS questioned a number of the expenses listed as deductions and allowed no part of Tower's adjusted loss to Bedford Associates because according to the IRS: "the amendment [signed December 1, 1980 and naming plaintiff as a limited partner] stated reason no [sic] as to why profits and losses were to be allocated this way. Bedford Associates contributed only $5000.00 in capital, which was only 4.144% of the total capital contribution." The IRS disallowed the $256,714.00 portion of the Bedford Associates, 1980 loss which was based on the Tower loss and the $110,-000.00 loss attributed to guarantee payments. Bedford Associates, therefore, was allowed to claim a loss of only $9,033.00, representing its legal fees and amortization. Consequently, plaintiff was allowed a loss of only $700.00 for tax year 1980, representing his 7.76 percent share of Bedford Associates' $9,033.00 allowed loss. As a result of this change, the IRS proposed a tax deficiency of $17,662.00 for tax year 1980 for plaintiff, Lowenstein. Plaintiff contested the proposed disallowance of the partnership losses and resulting deficiency by letter dated July 7, 1986.

Leonard Levine, another limited partner, who also had a 7.76% distributive share in Bedford Associates, likewise received notice of a disallowance and notice of deficiency in a letter from the IRS dated October 4, 1984. Levine timely filed a petition in the United States Tax Court to challenge the proposed disallowance and resulting deficiency.

According to an affidavit completed by Alfred A. Pierri, Esq., a former attorney with the Office of the District Counsel, Internal Revenue Service, in Newark, New Jersey, tax cases involving partnerships for the 1980 tax year were handled by his office using a "key case" method. No other evidence has been proffered by either party to suggest that this was, or was not, the normal, or preferred, method of handling these tax cases. According to this method, the first docketed case involving a single investor of a partnership was designated the "key case." The result obtained in litigation or settlement would then be used as the basis for the IRS to settle all other cases involving other investors in the

as not material to the instant motions and a typographical error. Plaintiff's 7.76 number is not disputed by defendant, and both parties use the 7.76 number in their calculations.

same partnership. With regards to the Bedford Associates partnership, Pierri recollected that the *Levine* case was designated as the "key case." In late 1986, the IRS and Herbert L. Zuckerman (counsel for both Levine and plaintiff) negotiated an agreement in the *Levine* case under which all the issues relating to the 1980 calculation of the allowed loss for the individual Bedford Associates' partners were resolved. The *Levine* agreement was committed to writing in a Counsel Settlement Memorandum, dated March 27, 1987, and a Form 906 Closing Agreement, finalized May 7, 1987.

Plaintiff, in the instant case, was informed of the settlement of the *Levine* case by a letter dated April 27, 1987 from IRS Appeals Officer James Izbicki, who was assigned to handle plaintiff's case. Izbicki informed plaintiff that, before the terms of the settlement could be applied to plaintiff's 1980 return, plaintiff would have to submit copies of his 1981, 1982 and 1983 returns to the IRS for computational purposes and that a closing agreement would be required.

After the requested documents were furnished to the IRS by plaintiff, an "Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment" (Form 870–AD) and a Closing Agreement (Form 906) were prepared in connection with plaintiff's case. The Form 906 was signed by plaintiff, Lowenstein, and the Acting Associate Chief, Appeals Office of the IRS. The Form 870–AD was executed by plaintiff's counsel on behalf of the plaintiff on September 21, 1987, and accepted by the Associate Chief, Appeals Office on behalf of the IRS Commissioner on September 24, 1987. By the terms of the Form, plaintiff's tax deficiency was settled at $14,297.00, rather than the $17,662.00 figure the IRS had originally calculated in a Report of Individ-

ual Income Tax Examination Changes on April 30, 1986.

Plaintiff paid the deficiency shown on the Form 870–AD on November 2, 1987. This payment consisted of $14,297.00 in deficiencies and $16,911.59 in interest. Plaintiff, thereafter, submitted a claim for refund with the IRS, Form 1040X, on January 14, 1988, requesting a refund of $23,595.00 in tax and interest for 1980, alleging that the defendant had erroneously calculated his share of the Bedford Associates' partnership loss. This claim was disallowed by the IRS in a letter dated August 15, 1988,[3] which included the following words "... because prior reject still applied since you [plaintiff Lowenstein] signed forms 906 and 870–AD case cannot be reopened." Plaintiff then filed this action in the United States Claims Court on October 11, 1988. Subsequently, defendant moved for summary judgment and plaintiff responded by filing a cross-motion for summary judgment. The parties specifically waived the opportunity to present oral argument.

## DISCUSSION

Summary judgment in the United States Claims Court is properly granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of the Rules of the United States Claims Court (RUSCC) is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed. R.Civ.P.) and is similar in language and effect.[4] Both Rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RUSCC 56(c); Fed.R.Civ.P. 56(c). Rule 56(c) of the

---

3. In defendant's proposed findings of uncontroverted fact, defendant's counsel erroneously uses the May 9, 1988 date on which the claim was received as the date for the disallowance.

4. In general, the Rules of the United States Claims Court (RUSCC) are closely patterned upon the Federal Rules of Civil Procedure (Fed.

R.Civ.P.). Therefore, precedent under the Fed. R.Civ.P. is relevant to interpreting the RUSCC, including RUSCC 56(c). *See Imperial Van Lines Int'l, Inc. v. United States*, 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States*, 17 Cl.Ct. 67, 70 (1989).

Rules of the United States Claims Court provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rust Communications Group, Inc. v. United States*, 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Associates, Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991).

Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Uniq Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2510; *see, e.g., Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990), *aff'd*, 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. at 2511–12. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied.

As indicated above, any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Industrial Products, Inc. v. Solid State Systems Corp.*, 755 F.2d 158, 163 (Fed.Cir. 1985); *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

■ In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court added an additional provision to the long standing summary judgment guidelines outlined above when it indicated that the initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged, if the moving party can show, alternatively, that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. at 2553; *see also Lima Surgical Assoc.*, 20 Cl.Ct. at 679. If the moving party makes this showing, the burden is placed on the nonmoving party to show that a genuine factual dispute exists by presenting evidence establishing the existence of an element of its case upon which it bears the burden of proof. *Lima Surgical Assoc.*, 20 Cl.Ct. at 679. The logic behind this addition is simple. If, under no scenario, can the nonmoving party present the evidence necessary to support its case, then there should be no genuine need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings. Under Rule 56, the motion for summary judgment may succeed, whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. Generally, however, in order to prevail, the nonmoving party will need to go beyond the pleadings, by use of evidence such as affidavits, depositions, answers to interrogatories and admissions, in order to show that a genuine issue for trial exists. *Celotex v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. The type of evidence provided by the party op-

posing summary judgment need not meet the standards for admissibility at trial.

The fact that both parties have moved for partial or full summary judgment, based on the alleged absence of genuine issues of material fact, does not relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)). "Simply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692–93 (4th Cir.1968), *cert. denied*, 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also Levine v. Fairleigh Dickinson Univ.*, 646 F.2d 825, 833 (3d Cir.1981); *Home Ins. Co. v. Aetna Cas. & Sur. Co.*, 528 F.2d 1388, 1390 (2d Cir.1976). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc. v. United States*, 812 F.2d at 1391. The record submitted to the court in the instant case reveals no material facts in dispute. Consequently, the case may be disposed of by summary judgment. After signing the Form 870–AD, plaintiff paid the deficiency amount of $14,247.00, plus interest in the amount of $16,911.59 on January 14, 1988. Plaintiff then filed for a refund based on an alleged mistake. The IRS disallowed plaintiff's request by certified mail on August 15, 1988.

Plaintiff's principle argument in the case at bar is that the "Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment" (Form 870–AD), executed on September 21, 1987, by Herbert Zuckerman (plaintiff's counsel) on behalf of plaintiff Lowenstein, and by the Associate Chief, Appeals Office, Newark, New Jersey, on September 24, 1987, should be reopened due to an alleged "important mistake in mathematical calculation." Plaintiff alleges that the error was committed by IRS Appeals Officer, James T. Izbicki, who omitted a $110,000.00 deduction for guarantee payments claimed by Bedford Associates on its partnership return for tax year 1980 (Form 1065), and that, therefore, plaintiff's tax deficiency is off by $3,274.00. Defendant disputes plaintiff's allegations, and, as a matter of law, argues that the 870–AD agreement may not be set aside.

The Form 870–AD is a settlement procedure employed by the IRS Appeals Office, and executed in tax cases not docketed in the Tax Court, to reflect an agreement between the taxpayer and the IRS in a mutual-concession type of settlement. Michael I. Saltzman, *IRS Practice & Procedure* 9–56, ¶ 9.08[1][a] (1991). A Form 870–AD waiver contains a pledge against the reopening of a case. *See Id.* Thus, if a waiver is executed, the IRS may not make an additional assessment, and the taxpayer may not sue for refund. *Id.* The language of the Form 870–AD executed in plaintiff's case reads:

> If this offer is accepted for the Commissioner, the case shall not be reopened in the absence of fraud, malfeasance, concealment, or misrepresentation of material fact, *an important mistake in mathematical calculation*, deficiencies or overassessment ... and no claim for refund or credit shall be filed or prosecuted for the year(s) stated above other than for amounts attributed to carrybacks provided by law. (emphasis added).

Plaintiff Lowenstein tries to rely on the phrase "an important mistake in mathematical calculation" to encourage this court to reopen the 870–AD agreement in his case. Plaintiff contends that the figures used in the Form 870–AD, representing plaintiff's share of Bedford Associates' allowable deficiencies for 1980, were themselves incorrect in that they did not follow the terms of

the "key case." Plaintiff relies on the lack of conformity in the resolution of his case with the *Levine* "key case" settlement as support for arguing that, "an important mistake in mathematical calculation" was made in his case. Plaintiff does not assert, however, that the actual mathematic computations of the numbers used in the Lowenstein settlement were wrong.

Form 870–AD, which plaintiff Lowenstein executed, is titled: "Department of the Treasury—Internal Revenue Service Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment." On the face of the form, the introductory words included are as follows:

Pursuant to the provisions of section 6213(d) of the Internal Revenue Code of 1954, or corresponding provisions of prior internal revenue laws, the undersigned offers to waive the restrictions provided in section 6213(a) of the Internal Revenue Code of 1954, or corresponding provisions of prior internal revenue laws, and to consent to the assessment and collection of the following deficiencies with interest as provided by law. The undersigned offers also to accept the following overassessments as correct:

The relevant section of the statute, 26 U.S.C. § 6213(d) (1982), is titled and reads:

(d) Waiver of restrictions

The taxpayer shall at any time (whether or not a notice of deficiency has been issued) have the right, by a signed notice in writing filed with the Secretary, to waive the restrictions provided in subsection (a) on the assessment and collection of the whole or any part of the deficiency.

26 U.S.C. § 6213(a) (1982) states:

(a) Time for filing petition and restriction on assessment

Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6851 or section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A, or B, chapter 41, 42, 43 or 44 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90–day or 150–day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court.

26 U.S.C. § 6213(g) (1982) provides definitions to be used for interpreting 26 U.S.C. § 6213:

(g) Definitions

For the purposes of this section— ...

(1) Return

\*　　\*　　\*　　\*　　\*　　\*

(2) Mathematical or clerical error.— The term 'mathematical or clerical error' means—

(A) an error in addition, subtraction, multiplication, or division shown on any return,

(B) an incorrect use of any table provided by the Internal Revenue Service with respect to any return if such incorrect use is apparent from the existence of other information on the return,

(C) an entry on a return of an item which is inconsistent with another entry of the same or another item on such return,

(D) an omission of information which is required to be supplied on the return to substantiate an entry on the return, and

(E) an entry on a return of a deduction or credit in an amount which exceeds a statutory limit imposed by subtitle A or B, or chapter 41, 4, 43, or 44, if such limit is expressed—

(i) as a specified monetary amount, or

(ii) as a percentage, ratio, or fraction,

and if the items entering into the application of such limit appear on such return.

This court disagrees with plaintiff's characterization that the apparent failure, by the IRS Appeals Officer, to use the numbers in the *Levine* case, rather than the commission of an actual mechanical error of arithmetic calculation, constitutes a "mathematical error" as defined in § 6213(g)(2)(A). Moreover, of the definitions included in 26 U.S.C. § 6213(g), plaintiff only could be relying on subsection (A), which defines "mathematical or clerical error" as "an error in addition, subtraction, multiplication, or division shown on any return...." The remaining subsections appear to deal with other types of mistakes, not remotely relevant to plaintiff's situation.

Although inconsistent with plaintiff's claim included in his cross-motion for summary judgment that the Form 870–AD should be reopened based on the commission by the IRS of an "important mistake in mathematical calculation," in plaintiff's reply to defendant's response to plaintiff's cross-motion for summary judgment, plaintiff also argues that the definitions included in 26 U.S.C. § 6213(g) do not apply to this case. Plaintiff contends that Congress did not intend that the definition of "mathematical error" apply to the reopening of a Form 870–AD, but that it only pertains to those instances when the IRS could summarily assess (that is assess additional tax without the requirement of sending the taxpayer notice or providing an opportunity for petition) a deficiency under 26 U.S.C. § 6213(b)(1) (1982). In support of this proposition, plaintiff points to the legislative history of the enactment of 26 U.S.C. § 6213(f)(2) (1976),[5] as stating it is "to clarify the kinds of cases in which the Service could use this restricted summary assessment authority." Committee Report on P.L. 94–455, 1976–3 C.B. 384.

Although the title of 26 U.S.C. § 6213 is "Restrictions applicable to deficiencies; petition to Tax Court," the settlement procedure used in plaintiff's case was fashioned to resolve the case because of a deficiency assessed against plaintiff. The shorthand procedure of utilizing the "key case" method and executing a Form 870–AD, rather than having the plaintiff proceed in the Tax Court, was resorted to voluntarily by both plaintiff and defendant in order to save both parties time and money. The Form 870–AD is a permissive method of allowing the taxpayer to offer (as evidenced by plaintiff's signature on the documents) to waive the restrictions in section 6213(a) of the IRC and to assent to assessment, over-assessment and/or deficiency, with interest, in the amounts shown on the face of the document, in plaintiff's case $14,297.00. The signature of the authorized IRS officials (in plaintiff's case, the Associate Chief, Appeals Office) denotes the acceptance of the terms proposed in the 870–AD. Having taken advantage of the 870–AD procedure, plaintiff should not now be allowed to argue that the very statutory scheme, and the definitions included in the statute, under which the procedure was devised, are inapplicable.

Form 870–AD states on its face that it is issued pursuant to 26 U.S.C. § 6213. Section 6213(g) clearly indicates that the definitions in subsection 6213(g) are "for purposes of this section [26 U.S.C. § 6213]," in other words for use with all of section 6213. The calculations which lead to the determination of plaintiff's tax deficiency do not fall into the definition of mathematical error included in subsection (g). Therefore, it would appear that plaintiff should not be allowed to reopen the Form 870–AD agreement. In the instant case, determining whether the Appeals Officer followed the same procedure in plaintiff's case as that employed in the "key case," is not an exercise in finding an error in arithmetic, but rather one of determining why the

**5.** On December 24, 1980, Pub.L. No. 96–589, added a new subsection (f). Former subsection (f), therefore, was redesignated (g).

Appeals Officer used or omitted the figures he chose to employ.

■ Under standard concepts of statutory construction, if a statute is plain and unequivocal on its face, there is no need to resort to the legislative history underlying the statute. *Reid v. Department of Commerce*, 793 F.2d 277, 281 (Fed.Cir.1986) (citing, *United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961), *reh. den.*, 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961)). A court should resort to legislative history if:

> ... a literal interpretation would lead to an incongruous result. For example, if a literal reading of the statute would impute to Congress an irrational purpose, *United States v. Bryan*, 339 U.S. 323, 338, 70 S.Ct. 724, 734, 94 L. Ed. 884 (1950), or would thwart the obvious purpose of the statute, *Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643, 98 S. Ct. 2053, 2061, 56 L.Ed.2d 591 (1978), or would lead to a result at variance with the policy of the legislation as a whole, *Trustees of Indiana University v. United States*, 618 F.2d 736, 739, 223 Ct. Cl. 88, 94 (1980), then literal interpretation will be eschewed in favor of resort to the legislative history to ascertain the intent of Congress. *United States v. Oregon*, 366 U.S. at 648, 81 S. Ct. at 1281; 2A Sands § 46.07.

*Reid*, 793 F.2d at 281–82.

The case at bar deals with interpretation of the definitions included in 26 U.S.C. § 6213(g) and their application to the Form 870–AD used in settling plaintiff's case. "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985). "A firmly established principle of statutory interpretation is that 'the words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses.'" *Hanover Bank v. Commissioner*, 369 U.S. 672, 687, 82 S.Ct. 1080, 1089, 8 L.Ed.2d 187 (1962) (quoting,

*Crane v. Commissioner*, 331 U.S. 1, 6, 67 S.Ct. 1047, 1050, 91 L.Ed. 1301 (1947)). "Congress has delegated to the Commissioner, not to the courts, the task of prescribing 'all needful rules and regulations for the enforcement' of the Internal Revenue Code." *United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 449–50, 19 L.Ed.2d 537 (1967) (quoting 26 U.S.C. § 7805(a)); *see also United States v. Moore*, 95 U.S. 760, 763, 24 L.Ed. 588 (1878). According to *National Muffler Dealers Ass'n v. United States:*

> that delegation helps ensure that in 'this area of limitless factual variations,' *ibid.* [*United States v. Correll*, 389 U.S. at 307, 88 S.Ct. at 450] like cases will be treated alike. It also helps guarantee that the rules will be written by 'masters of the subject,' *United States v. Moore*, 95 U.S. 760, 763, 24 L.Ed. 588 (1878), who will be responsible for putting the rules into effect.

*National Muffler Dealers Ass'n v. United States*, 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979).

The Federal Circuit has stated that "[w]here the language is plain and admits of no more than one meaning the duty of interpretation does not arise...." *Henry v. United States*, 793 F.2d 289, 293 (Fed. Cir.1986) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1916)). Further, "interpretation of the statute[,] beyond its clear language[,] to discern a statutory purpose at variance with its terms [as plaintiff in the instant case urges] must disclose a 'clearly expressed legislative intent to the contrary.'" *Neptune Mut. Ass'n Ltd. of Bermuda v. United States*, 13 Cl.Ct. 309, 313 (1987) (citing *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

Moreover, while plaintiff has directed the court to the legislative history of section 6213(g), he has offered no evidence of intent on the part of Congress to define "mistake in mathematical calculation" in the Form 870–AD as anything different from the definition of "mathematical error"

provided in 26 U.S.C. § 6213 itself. This court should not interpret the intent of Congress beyond the plain meaning of the applicable statute, especially when to do so would be contrary to the logic of the plain language, since the plain meaning of section 6213(g)(2) does not leave open much room for doubt as to its meaning.

Although it should not be necessary in the instant case to resort to the legislative history, because the language of the statute is so clear, the language of the Joint Committee Explanation of § 6213(g), in fact, adds authority to defendant's position that a mathematical error of calculation is what was contemplated by the words of § 6213(g)(2)(A).

The Joint Committee Report on Taxation Explanation, when commenting on "Assessments in Case of Mathematical or Clerical Errors (sec. 1206 of the Act and sec. 6213 of the Code)," pointed out that courts "generally had limited the scope of the term, mathematical error, to arithmetic errors involving numbers which are themselves correct." Joint Committee Report, P.L. 94–455, Tax Reform Act of 1976. This same report continued with comments on the five categories included in the definition of mathematical or clerical error in a section titled "Explanation of provision," and interpreted § 6213(g)(2)(A) as being "arithmetic errors." The Committee went on to discuss the meaning of arithmetic error as:

> Examples of errors in addition, subtraction, etc., include $2 + 2 = 5$ and $7 - 0 = 0$. In the usual case, such an error will be apparent and the correct answer will be obvious. However, care should be taken to be sure that what appears to be an error in addition or subtraction is not in reality an error in transcribing a number from a work sheet, with the final figure being correct even though an intermediate arithmetical step on the return appears to be wrong. It is expected that the Service will check such possible sources of apparent arithmetical errors before instituting the summary assessment procedures.

Joint Committee Report, P.L. 94–455, Tax Reform Act of 1976, Internal Revenue Cumulative Bulletin 1976–3, Volume 2. Under a reading of 26 U.S.C. § 6213 and the explanatory notes of the Joint Committee, the plaintiff's alleged error cannot be classified as "an important mistake in mathematical calculation," for the purpose of reopening plaintiff's case.

The court notes that *Texas State Comm'n for the Blind v. United States*, 796 F.2d 400 (Fed.Cir.1986), found that even if a statute is clear on a purely linguistic level, interpretation may be necessary if the literal language does not do justice to the realities of the situation. *Id.*, (citing *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892)). However, this court believes that the intent of Congress regarding the definition of mathematical error is clear, and that the language directing the use of the definitions of 26 U.S.C. § 6213(g) for all of 26 U.S.C. § 6213 is neither ambiguous, nor blind to the practical realities of Tax Court assessment and settlement procedures. Moreover, under the circumstances of the instant case, the plain language definition of mathematical error as an arithmetic error will cause no injustice. Plaintiff's counsel, as counsel for both plaintiff and *Levine* in the "key case," was knowledgeable about the terms of the *Levine* settlement when he signed the Form 870–AD on behalf of his client, Lowenstein, and accepted the deficiencies in plaintiff's case. Presumably, plaintiff's counsel was, therefore, well aware of the settlement terms and of the figures regarding the Bedford Associates Partnership which were used to settle the "key case," when he agreed to the terms in plaintiff's case, and signed the Form 870–AD on plaintiff's behalf.

Plaintiff is also unable to repudiate the Form 870–AD because of the concept of equitable estoppel. *See Union Pacific R.R. v. United States*, 847 F.2d 1567, 1569 (Fed.Cir.1988). Both the United States Claims Court and the United States Court of Appeals for the Federal Circuit have applied the doctrine of equitable estoppel to prevent a taxpayer from litigating a refund

claim for the year(s) covered by a Form 870–AD. *Id.* at 1571–73; *Kretchmar v. United States,* 9 Cl.Ct. 191 (1985).[6] *But cf. Arch Engineering Co. v. United States,* 783 F.2d 190 (Fed.Cir.1986). (In *Arch Engineering,* however, the court did not allow equitable estoppel based on a clause, added by the parties to the back of the Form 870–AD, stating that the agreement form would not estop or bar the taxpayer from filing timely claims for refund.)

In order to apply the doctrine of equitable estoppel three conditions must be established:

(1) the execution of the Form 870–AD was the result of mutual concession or compromise; (2) there was a meeting of the minds that the claims be extinguished; and (3) that to allow the plaintiff to reopen the case would be prejudicial given the defendant's reliance on the extinguishment thereof.

*Union Pacific R.R. v. United States,* 847 F.2d at 1571 (quoting *Kretchmar,* 9 Cl.Ct. at 198). This court finds that, in the instant case, all three criteria have been met.

The facts in *Kretchmar* are similar to the facts of the case at bar. In *Kretchmar,* the IRS conducted an audit of certain tax years, which resulted in the assessment of an income tax deficiency. Following the audit, the IRS issued a deficiency notice and an offer of settlement, Form 870. The plaintiffs then appealed the deficiency to the Appeals Office of the IRS, which, upon further discussions, agreed to accept a lesser amount for one of the tax years involved. *Kretchmar v. United States,* 9 Cl.Ct. at 193. As "evidence of the results of the compromise/settlement negotiations, and in order to preclude future assessments against such taxable years, plaintiffs executed Form 870–AD ... which was accepted for the Commissioner of Internal Revenue." *Id.* Plaintiffs, thereafter, filed a claim for refund with the IRS, which was disallowed, and then proceeded to file a claim in the United States Claims Court.

*Kretchmar v. United States,* 9 Cl.Ct. at 194. The *Kretchmar* case was disposed of by a summary judgment decision which held that the plaintiffs were "barred from litigating the merits of their refund suit on the grounds that the doctrine of equitable estoppel, stemming from their previous execution of IRS Form 870–AD, is a complete impediment." *Kretchmar v. United States,* 9 Cl.Ct. at 193.

In *Union Pacific R.R. v. United States,* the Court of Appeals for the Federal Circuit found the first requirement of equitable estoppel, "mutual concession and compromise," on the face of the agreement itself and the circumstances surrounding its completion. The court noted that:

several letters and conferences occurred, with changing and adapting of terms, resulting in the final letter of November 29, 1948, outlining the interest restrictions. Union Pacific accepted the government's terms, without written reservations, in a letter dated December 14, 1948. No clearer example of mutual compromise or concession is necessary. Test one of the equitable estoppel doctrine is thus satisfied.

*Union Pacific R.R. v. United States,* 847 F.2d at 1572. Previously, the Court of Claims had also applied the doctrine of equitable estoppel and found that a Form 870 settlement agreement was reached as a result of either mutual concession or compromise for all taxable years involved and that:

By that agreement the parties did much more than agree on the amount of plaintiff's tax liability, as is shown by the two paragraphs which were added to the stated form which they used as a vehicle to set up their agreement finally closing the case.

In language which we think is too clear to be misunderstood and which would be rendered meaningless if plaintiff's interpretation were to prevail, the agreement states: 'If this proposal is

---

6. The United States Court of Appeals for the Federal Circuit has cited *Kretchmar* as "the most thorough and best-reasoned discussion we have seen dealing with equitable estoppel in the federal tax case, and itself, cites ample authority for its conclusions." *Union Pacific R.R. v. United States,* 847 F.2d at 1571.

accepted by or on behalf of the Commissioner, the case shall not be reopened nor shall any claim for refund be filed or prosecuted respecting the taxes for the years above stated, in the absence of fraud, malfeasance, concealment or misrepresentation of material fact, or of an important mistake in mathematical calculations.' There is no contention that there was any fraud, malfeasance, concealment, misrepresentation, or mistake in calculation. How this could be interpreted other than to preclude plaintiff from filing a claim for refund or prosecuting this suit is difficult to understand.

Plaintiff says, however, that the agreement is lacking in mutuality for the reason that the Commissioner was left free to reopen the case and assess further deficiencies. We do not so interpret the document. It is true, as will be noted from the document set out in finding 6, that on the prescribed Form 870 there was a provision which expressly stated that the execution of the agreement 'does not * * * preclude the assertion of a further deficiency in the manner provided by law should it subsequently be determined that additional tax is due,' but when the parties prepared and executed the agreement here involved that provision was stricken. A reasonable interpretation of the entire document is that what the parties sought to do was to close the case in such a manner that it could not be reopened either for a refund or for the assessment of deficiencies except in the case of fraud, malfeasance, etc. We see no reason for interpreting the document otherwise.

*Guggenheim v. United States,* 77 F.Supp. 186, 195–96, 111 Ct.Cl. 165, 180–81 (1948). In *Kretchmar,* the court found mutual concession and compromise as a result of mutual negotiations, supported by a subsequently executed Form 870–AD. *Kretchmar v. United States,* 9 Cl.Ct. at 199.

In the instant case, evidence of mutual concession and compromise can be established not only from the Form 870–AD itself, but also from evidence surrounding the completion of that form. Plaintiff's letter, dated July 7, 1986, protested the IRS's proposed disallowance of the partnership losses and requested consideration by the IRS Appeals Office. The IRS Appeals Office responded in a letter of August 25, 1986 scheduling a meeting, at the plaintiff's request, for September 18, 1986 to discuss plaintiff's 1980 tax liability. Plaintiff failed to keep this appointment. Therefore, the IRS issued a notice that if plaintiff did not respond by October 13, 1986, the IRS would assume that consideration of the appeal should be waived and that a notice of deficiency would be issued.[7] On April 27, 1987, the Appeals Officer notified plaintiff of the *Levine* "key case" settlement, and requested that: "[b]efore I can apply the terms of the settlement to Mr. Lowenstein's 1980 return, please furnish copies of his 1981, 1982 and 1983 returns for computational purposes." After the required documents were furnished by plaintiff, the IRS Appeals Officer, by a May 30, 1987 letter, indicated that further discussions between the parties had taken place resulting in an agreement which was intended "to close the above case on the basis proposed in our discussion." In addition, an internal IRS "Appeals Transmittal Memorandum and Supporting Statement," dated September 28, 1987, stated that "Newark District Counsel settled the Bedford Apartment and Bedford Associates cases" and that "the T/P [taxpayer Lowenstein], a 7.76% Limited partner, was agreeable to settling his case on this basis." This series of communications between plaintiff and the IRS, like those involved in the *Union Pacific, Guggenheim,* and *Kretchmar* cases, indicates that the eventual execution of the Form 870–AD was the

---

**7.** Although not critical to the disposition of the instant case, the court notes the lack of documentation in the record for the time period from October 13, 1986 to April 27, 1987, the date of the letter from the IRS to plaintiff. However, because no notice of deficiency was sent to plaintiff, and because the case was ultimately resolved through further negotiations and the execution of a Form 870–AD, it is assumed that plaintiff ultimately responded to the IRS and discussions and negotiations in regards to the 1980 tax year resumed during this period.

result of mutual concession and compromise.[8]

In addition to the above documentation, the court notes that plaintiff's counsel also represented Mr. Levine in the "key case." Thus, presumably, plaintiff's counsel was involved in the discussions and decisions which ultimately ended in a closing agreement (Form 906) and the settlement memorandum setting forth Mr. Levine's adjusted tax deficiency. In fact, the same agreement terms, based on the same discussions and decisions, were then offered to plaintiff. Plaintiff, by and through the signature of counsel, accepted the same concessions as had been accepted in the *Levine* case regarding his proportionate share of tax liability.[9] As a result of this concession and compromise, plaintiff's tax liability for 1980 was adjusted to use the figure $14,-297.00, rather than to use the $17,662.00 figure, which was originally proposed. This adjustment also represents compromise by both parties. Plaintiff agreed not to file a claim for refund, and the IRS agreed not to pursue further assessment and to accept a lesser amount as plaintiff's tax liability. This unmistakably shows mutual concession and compromise on the part of both parties.

The second condition for the application of equitable estoppel is that there was a "meeting of the minds that the claims be extinguished." *Union Pacific R.R. v. United States*, 847 F.2d at 1572. The United States Court of Appeals for the Federal Circuit pointed out that the idea of a meeting of the minds is "[i]nextricably tied to mutual compromise or concession." *Id.* at 1572. In the instant case, the final agreements evidenced in the Form 906 closing

agreement (which settled the amounts of amortization of the previously disallowed Tower losses available to Bedford Associates) and the signed Form 870–AD waiver agreement (which represented how much of these losses plaintiff was entitled to take) show that there was a meeting of the minds, including an agreement that any right to reopen the case be extinguished, as stated on the Form 870–AD, in return for settlement of plaintiff's case by the IRS.

The final condition of equitable estoppel is that allowing plaintiff to reopen the Form 870–AD would be prejudicial to the defendant, given the defendant's reliance on the extinguishment of plaintiff's case. *Union Pacific R.R. v. United States*, 847 F.2d at 1571. In *Guggenheim v. United States*, the court found that because the statute of limitations had run, "[i]t would obviously be inequitable to allow the plaintiff to renounce the agreement when the Commissioner cannot be placed in the same position he was when the agreement was executed." *Guggenheim v. United States*, 111 Ct.Cl. at 182, 77 F.Supp. at 196. Based on Form 872–A, "Special Consent to Extend the Time to Assess Tax," the time the IRS had to assess additional taxes for the period ending December 31, 1980 expired on the "assessment date of an increase in the above tax that reflects the final determination of tax and the final administrative appeals consideration." This occurred on September 16, 1987, when the Commissioner accepted plaintiff's adjusted tax liability, reflected in the Form 870–AD. Therefore, the period of limitations, which would allow defendant to make further assessments, expired before plaintiff filed his claim for refund. Thus, defendant would be preju-

---

8. Plaintiff's counsel even used the terms "concession" and "conceded" in "Plaintiff's Objection to Defendant's Motion for Summary Judgment and Plaintiff's Cross–Motion for Summary Judgment," as follows: "In the latter part of 1986, Mr. Zuckerman met with Alfred A. Pierri, Esq. of the Newark District Counsel's office and negotiated an overall settlement of all issues relating to a partner's correct share of Associates' 1980 loss. Under the statement, *both sides made concessions* in order to resolve the case. For example, the Internal Revenue Service *conceded* the proposed adjustment wherein Associates would be denied any part of the Towers

loss but the partnership agreed to a correct Towers' 1980 loss of $5,560.80 rather than the $69,904.00 allowed by the original examiner." (emphasis added).

9. Plaintiff's counsel had an opportunity to object to the provisions of the Form 870–AD he signed on behalf of plaintiff Lowenstein, but he failed to do so. The plaintiff, through his counsel, was informed, and chose to sign the Form 870–AD, as presented. *See Union Pacific R.R. v. United States*, 847 F.2d at 1570.

diced by allowing plaintiff to set aside the agreement reached in the Form 870–AD. *See McGraw–Hill, Inc. v. United States,* 224 Ct.Cl. 354, 623 F.2d 700 (1980); *DDI, Inc. v. United States,* 199 Ct.Cl. 380, 467 F.2d 497 (1972), *cert. denied,* 414 U.S. 830, 94 S.Ct. 61, 38 L.Ed.2d 65 (1973). For the foregoing reasons, the court finds that all three criteria of the doctrine of equitable estoppel have been met in the case at bar. Therefore, plaintiff should be estopped from repudiating the Form 870–AD, as signed by both parties.

■ As to defendant's third argument included in its motion to dismiss, that even if the plaintiff prevails on the merits he is not entitled to a refund, the court disagrees. Defendant contends that pursuant to the Uniform Limited Partnership Act, Section 42:2–12, New Jersey Statutes Annotated, plaintiff did not become a limited partner of Bedford Associates until December 30, 1980, the date the amendment of the original partnership agreement and certificate was filed in the county office. The court notes that in defendant's filing it has claimed that the plaintiff did not become a limited partner until December 30, 1989. This must be a typographical error on the defendant's part. The copy of the First Amendment of Limited Partnership Certificate and Agreement Bedford Associates, contained in defendant's appendix to its motion to dismiss clearly shows a filing date with the Clerk's office of Bergen County as December 30, 1980. Defendant urges, based on this contention, that plaintiff is entitled to a percentage share representing only two days of Tower's allowed losses. The defendant's reliance on New Jersey Partnership Law in this instance is misplaced.

26 C.F.R. § 1.761–1(c) (1980) clearly states that local law applies only to matters on which the partnership agreement is silent. The "Bedford Associates' Limited Partnership and Agreement" partnership agreement, in express terms, reads that, "[t]he effective date of an assignment of the interest of a Limited Partner shall be that date set forth on the written instrument of assignment." Partnership Agreement, Article Eight, section 8.1(a). The agreement goes on to state in section 8.1(d) that:

The net profits and losses and cash flow of the Partnership attributable to the interest of a Limited Partner acquired by reason of such assignment shall be allocated between the assignor and assignee of such interest as of the effective date of the assignment of such interest and in accordance with subsection (e) below.

According to the direct language of the partnership agreement, plaintiff became a limited partner as of the date set forth on the amendment, December 1, 1980, and was entitled to the net profits, losses or cash flows from the partnership as of that date.

Upon careful review of the entire record and the applicable statutes, regulations, and case law, the court finds that no genuine issue of material fact exists in plaintiff's case, and that defendant's motion for summary judgment should be GRANTED. Plaintiff's motion for summary judgment is, hereby, DENIED. The Clerk of the Court is directed to dismiss the above captioned case.

IT IS SO ORDERED.