**KMART CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 91–1198.**

United States Court of Federal Claims.

Aug. 11, 1994.

John Hardin Young, Washington, DC, for plaintiff.

Bartholomew Cirenza, with whom was John A. Bruton, Acting Asst. Atty. Gen., U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## OPINION

SMITH, Chief Judge.

This matter is before the court on defendant's motion for summary judgment. The government contends that plaintiff's November 18, 1988, execution of an Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment (Form 870–AD), precludes plaintiff's instant tax refund claim. For the reasons stated the government's motion for summary judgment must be granted.

### FACTS

Plaintiff, Kmart Corporation, originally had two tax refund claims for tax years 1979–82. The first involved the proposed disallowance by the Internal Revenue Service of certain foreign buying commissions paid by Kmart, and its wholly-owned subsidiary, Kmart Apparel Fashions Corporation, to Kmart Far East Limited (§ 482 issue). Kmart's position on this issue was set forth in Kmart's income tax returns filed for the tax years in question. The second claim, and the dispute currently before the court, involves Kmart's alleged entitlement to Work Incentive Credits (WIN credits) for the tax years in question.[1] These claims were not made on Kmart's original income tax returns, but several years after the original returns were filed on Form 1120X.[2]

On February 25, 1987, the IRS issued its Revenue Agent's Report (RAR) for the tax years 1979–1982. The RAR proposed certain income reallocations to settle the § 482 issue, but did not propose allowance of the WIN credits claimed by plaintiff. In March 1987, plaintiff filed a Federal Income Tax Protest with the Appeals Division of the IRS. Plaintiff's protest argued that the IRS examining agent: (1) improperly denied Kmart's claims for WIN credits, and (2) made § 482 reallocations based on incomplete and inaccurate findings.

After filing its protest, plaintiff made an offer in settlement. On November 14, 1988, Kmart executed two documents: (1) a "Closing Agreement on Final Determination Cov-

---

1. WIN credits are available to employers that hire employees certified by the Secretary of Labor as persons receiving certain forms of governmental assistance. The dispute in this case was whether Kmart could claim WIN credits for employees who had been "retroactively" certified by the Secretary of Labor. The IRS' position seemed to be that "contemporaneous" certification was required.

2. Kmart initially filed "protective" claims in 1986 for the years in question. The protective claims filed with the IRS stated that:

   The refund is due to an oversight on the part of the Corporation in failing to claim a credit for qualified wages paid to employees who are eligible for the Work Incentive Credit (WIN) under IRC Section 50.

   On January 20, 1987, Kmart followed up with specific and detailed WIN credit refund claims for the years in question.

ering Specific Matters" which set forth the terms of a settlement on the § 482 issue; and (2) a Form 870–AD. The Form 870–AD provided in pertinent part that:

> Pursuant to the provisions of section 6213(d) of the Internal Revenue Code of 1954, or corresponding provisions of prior internal revenue laws, the undersigned offers to waive the restrictions provided in section 6213(a) of the Internal Revenue Code ... and to consent to the assessment and collection of the following deficiencies with interest as provided by law. The undersigned offers also to accept the following overassessments as correct:
>
> [January 25, 1978, no deficiency or overassessment; January 31, 1979, $1,674,155.62 deficiency; January 30, 1980, $42,410.10 deficiency; January 28, 1981, $51,447.20 overassessment; January 29, 1982 $1,859,-284.36 overassessment]
>
> \*     \*     \*     \*     \*     \*
>
> This offer is subject to acceptance for the Commissioner of Internal Revenue. It shall take effect as a waiver of restrictions on the date it is accepted. Unless it is accepted, it shall have no force or effect. If this offer is accepted for the Commissioner, the case shall not be reopened in the absence of fraud, malfeasance, concealment or misrepresentation of material fact, or an important mistake in mathematical calculation ... *and no claim for refund or credit shall be filed or prosecuted for the [1979–1982 tax years] other than for amounts attributed to carrybacks provided by law.*
>
> NOTE.—The execution and filing of this offer will expedite the above adjustment of tax liability. This offer, when executed and timely submitted, will be considered a claim for refund for the above overassessments.... It will not, however, constitute a closing agreement under section 7121 of the Internal Revenue Code.

Defendant's Exhibit 2; Plaintiff's Exhibit B–2 (emphasis added).

Plaintiff asserts that the Form 870–AD applied only to settling the § 482 issue, and not to the WIN credits issue. However, according to Internal Revenue Manual 8822, Modification of Agreement for Settlements with Reservations, a taxpayer must include an explicit discussion of any issue it wants to reserve for future litigation on the reverse side of Form 870–AD. Kmart did not follow this procedure.

Plaintiff's Form 870–AD was submitted to the Joint Committee on Taxation along with an Appeals Supporting Statement written by Appeals Officer Henry Starkman. Starkman was apparently the government's principle negotiator with Kmart. Starkman's statement contained a detailed analysis of both the § 482 issue and the WIN credits issue. In concluding his analysis of the § 482 issue, Starkman recommended that the Joint Committee approve the closing agreement. Starkman also expressed his opinion in some detail that Kmart was not entitled to the WIN credits. The closing agreement made no reference to the issue.

On May 4, 1989, the Joint Committee approved plaintiff's settlement offer without objection, thereby clearing the way for approval by the Internal Revenue Service of a "Closing Agreement on Final Determination Covering Specific Matters." On June 1, 1989, the Closing Agreement, which covered the settlement of the § 482 issue, was executed on behalf of the Commissioner by the Associate Chief of the Appeals Office. The IRS made adjustments to include the overassessments and the deficiencies and closed the files. The statute of limitations for assessing additional tax was allowed to expire on December 31, 1989.

On June 1, 1989, Starkman sent Kmart a Waiver of Statutory Notice of Claim Disallowance (Form 2297). Starkman's affidavit in the instant litigation states that he sought to protect the government's interest by requesting the Form 2297 in order to limit "the time during which a suit for refund could be filed." Starkman's affidavit also states:

> I believed at the time of the settlement that the taxpayer did not forfeit its legal remedies with regard to the Work Incentive Issue, and I believe so now.[3]

**3.** Plaintiff's exhibit A, Affidavit of Henry Stark-

man dated July 21, 1992 (originally submitted

On January 7, 1991, Kmart sent a "Request for Reconsideration" of the disallowance of the WIN credits. On May 29, 1991, this request was denied on the basis of the Form 870–AD. Kmart then filed the instant suit.

## DISCUSSION

On a motion for summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *C. Sanchez and Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed.Cir.1993) (citing *Celotex, Adickes,* and *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986)); *Lowenstein v. United States*, 27 Fed.Cl. 38, 42–43 (1992), *aff'd,* 6 F.3d 786 (Fed.Cir.1993) (unpublished disposition). Moreover, this standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id.* at 249, 106 S.Ct. at 2510–11. Accordingly, defendant's motion must succeed or fail based upon the court's interpretation of the law, accepting the Starkman affidavit and the factual circumstances most favorable to the plaintiff.

The defendant contends that the doctrine of equitable estoppel precludes this litigation because the plaintiff executed a Form 870–AD. When the IRS and a taxpayer enter into a Form 870–AD, the taxpayer is equitably estopped from filing a tax refund claim if three conditions are established:

(1) the execution of Form 870–AD was the result of mutual concession or compromise;

(2) there was a meeting of the minds that the claims be extinguished; and

(3) that to allow the plaintiff to reopen the case would be prejudicial given the defendant's reliance on the extinguishment thereof.

*Union Pacific R.R. Co. v. United States*, 847 F.2d 1567, 1571 (Fed.Cir.1988) (citing *Kretchmar v. United States*, 9 Cl.Ct. 191, 198 (1985)) [4]; *Lowenstein v. United States*, 27 Fed.Cl. 38, 49 (1992).

In the instant case, plaintiff argues that the doctrine of equitable estoppel does not apply because there was no agreement between the parties on the WIN credits issue. Thus, the court must determine whether Form 870–AD represents a mutual concession and meeting of the minds as to the WIN credits issue.[5]

### A. Mutual Concession or Compromise.

In *Kretchmar*, the court held that the plaintiffs were equitably estopped from litigating refund claims because of their execution of a Form 870–AD. The court described the execution of the form as "a bilateral process driven by mutual concession and

---

with Plaintiff's Response to Motion for Leave to File Amended Answer). A second affidavit, dated October 29, 1992, was submitted in opposition to the instant motion. The parties refer to both documents collectively as "the affidavit."

4. The *Union Pacific* court noted that *Kretchmar* was not binding authority but opined that "it is the most thorough and best reasoned discussion we have seen dealing with equitable estoppel in the federal tax case." 847 F.2d at 1571.

5. Prejudice to the government may be presumed because the statute of limitations has passed on additional tax assessments for the years in ques-

tion. *See Guggenheim v. United States*, 77 F.Supp. 186, 111 Ct.Cl. 165, 182 (1948) ("It would obviously be inequitable to allow the plaintiff to renounce the agreement when the Commissioner cannot be placed in the same position he was when the agreement was executed.") Although plaintiff can argue that the IRS has already collected its tax in this case so reassessment is unnecessary, prejudice may still be found. The Commissioner cannot be placed in the same position because it could not decide to reassess on the § 482 issue if the court allowed plaintiff to reopen the WIN credits issue.

compromise." *Id.* at 199. In the instant case, defendant argues that the Form 870–AD represents its concession of the § 482 issue, and Kmart's concession of the WIN credit issue. The government also relies on *Lowenstein v. United States,* 27 Fed.Cl. 38 (1992).

In *Lowenstein,* the court held that equitable estoppel precluded the taxpayer's refund claim despite the Form 870–AD's language allowing such action for mathematical mistake. The court described the Form 870–AD as "a settlement procedure employed by the IRS Appeals Office, and executed in tax cases not docketed in the Tax Court, to reflect an agreement between the taxpayer and the IRS in a mutual concession type of settlement." *Id.* at 44 (citing MICHAEL I. SALTZMAN, IRS PRACTICE & PROCEDURE 9–56, ¶ 9.08[1][a] (1991)). As evidence of mutual concessions, the *Lowenstein* court relied upon the language of the 870–AD *and* the Appeal Supporting Statement. In the instant case, the language of the 870–AD is identical to that in *Lowenstein.* Here the Form 870–AD and the Appeal Supporting Statement are silent on *settling* the WIN credits issue. However, while the Appeal Supporting Statement is silent on the settlement of the WIN credits issue, that issue is one of the major points dealt with in the Statement. When this circumstance is combined with the signing by plaintiff, *without reservation,* of the Form 870–AD, it is very hard not to draw the conclusion that their was a mutual concession or compromise and a meeting of the minds, that the WIN credits claim be conceded. Further, accepted IRS practices would suggest a mutual concession. *See e.g., Consolidated Gas Supply Corp. v. F.E.R.C.,* 745 F.2d 281, 291 (4th Cir.1984) ("what someone has not said" in an agreement, "someone has not meant to say").

**B. Meeting of the Minds.**

The Federal Circuit has said that the idea of meeting of the minds is inextricably tied to mutual compromise or concession. *Union Pacific,* 847 F.2d at 1572. Defendant again relies upon the documents themselves to indicate a meeting of the minds between Kmart and the IRS on conceding the WIN

credits issue. Plaintiff does not dispute the language of the documents, only the government's interpretation of them. Kmart relies upon Starkman's affidavit to show that the parties never intended to settle the WIN credit issue. In particular, plaintiff relies on the Waiver of Statutory Notice of Claim Disallowance (Form 2297) filed by Starkman, which provided a two year period for a refund suit and listed the WIN credit claims. Starkman's affidavit states:

> I requested Kmart to execute the Form 2297 because I concluded that it would be in the Government's interest to start the running of the statute of limitations for filing a suit for refund. In so doing, both the IRS and KMART understood that KMART had the right to pursue the WIN credit issue in court, and that its right to sue had in no way been limited by the settlement which was reached with respect to the Section 482 issues.

Plaintiff's Exhibit C, p. 3, ¶ 6. With respect to the affidavit two issues must be addressed. First, whether the court may consider it. Second, if it is considered, what is its significance.

As a general rule, parol or extrinsic evidence antecedent or contemporaneous to the contract at issue is inadmissible to vary, contradict, or add to the terms of an integrated contract. *Nicholson v. United States,* 29 Fed.Cl. 180, 193–95 (1993) (citing CORBIN ON CONTRACTS § 573, at 357; WILLISTON ON CONTRACTS § 631, at 948.) However, where the writing is incomplete or ambiguous, the rule does not apply. *Id.; see also Greco v. Department of the Army,* 852 F.2d 558, 560 (Fed.Cir.1988) ("only if there is ambiguity should parol evidence be considered"). In this instance, the court must consider the Starkman affidavit because it is argued that the Form 870–AD is ambiguous on the parties intention to settle the WIN credits issue.

Defendant further contends that the affidavit is irrelevant for several reasons. Starkman was not a signatory on the Form 870–AD, and had no authority to bind defendant. Thus, defendant asserts, plaintiff's reliance on Starkman's statements would be unreasonable. *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1,

3, 92 L.Ed. 10 (1947). However, this argument is misplaced. Here, it is the government that is trying to bind the plaintiff pursuant to the language of the Form 870–AD, not vice-versa. Plaintiff is using the Starkman affidavit for exactly the opposite purpose; to show that the government did not enter into a binding agreement with Kmart on the WIN credits issue. The court must consider Starkman's affidavit in deciding whether there was a meeting of the minds that the WIN credits issue was settled by the Form 870–AD.

 The Starkman affidavit clearly indicates that Mr. Starkman today does not believe plaintiff conceded the WIN credits claim. This, however, appears inconsistent with an objective and common sense reading of the documents at the time Form 870–AD was signed. It is inconsistent with the attention devoted by Mr. Starkman to analyzing plaintiff's position in the Appeals Supporting Statement which the signing of Form 870–AD must be read in the context of. It is also inconsistent with the signing, without reservation of any issue, of the Form 870–AD by both sophisticated tax representatives of the government and of plaintiff. And finally, it is inconsistent with the explicit language of Form 870–AD and Mr. Starkman's cover letter of August 5, 1988. That letter notes, "I have prepared the enclosed agreement form to close the above case on the basis proposed in our discussion...." It is hard to believe that Form 870–AD would have been signed by KMART, nine days later, without reservation, if it was intended that only the § 482 issues were settled. Finally, plaintiff's reliance upon Form 2297 provides little support for the proposition that there was no meeting of the minds on a concession of the WIN credits issue because that Form serves a number of purposes. There were, after all, a wide range of potential non–§ 482 and non-WIN credits issues available for possible litigation.

## CONCLUSION

There is precedent in the Federal Circuit, Court of Claims, and Claims Court to apply equitable estoppel in tax cases where a Form 870–AD has been executed. Although the documents can be read to lend support the plaintiff's position, through the skilled advocacy in this case, the plaintiff's position cannot prevail, even in the light of Mr. Starkman's affidavits. Accordingly, the motion for summary judgment must be granted. The clerk of the court is directed to dismiss plaintiff's complaint with prejudice.

IT IS SO ORDERED.